Reed, J.,
delivered the opinion of the court.
The only question presented for determination is the correctness of the judgment of the court upon the demurrer.
Counsel for defendant contended: 1st, that by the form and wording of the bond upon which suit was brought, it was the bond of the county and that no action could be maintained by the plaintiff; 2d, that the transaction was a loan by the treasurer, of the county funds, to the bank, and was illegal and void under the provisions of sections 1248 to 1251, Mills’Statutes. (Session Laws, 1889, pp. 297 and 298). Evidently, one or both of these views must have been adopted by the court as the basis of the judgment.
The county treasurer is by law made the custodian of the funds; is required to make a bond with three or more securities (Mills’ Stats., sec. 885; Gen. Stats., sec. 630), conditioned “ that he and his deputies shall pay according to law all moneys which shall come in his hands as treasurer, and shall render a just and true account, * * * and shall deliver the same to his successor.” (Mills’ Stats., sec. 886; Gen. Stats., sec. 631). For all shortcomings or irregularities he and his bondsmen are primarily responsible. Only in case of default or insolvency can he be divested of the control of the funds, and the money followed by the county into the hands of third parties.
In re House Resolutions, 12 Colo. 395, the question of the extent of and the limitations upon legislation under the constitution was brought to the attention of the supreme court, and it was said: “It is hardly possible that the framers of the *459 constitution intended to make the treasurer and his sureties absolutely responsible for the security of the public money, and yet authorize the legislature to lodge with some other official the control thereof. * * * The responsibility and control for safe-keeping naturally belong together.” It is also said: “ It is eminently proper, and, in view of section 13, article 10, of the constitution, it may be a legislative duty, to provide by statute that all interest paid by banks upon public funds deposited with them shall be placed to the credit of the state. * * * Reasonable legislative regulations, in addition to those named by the constitution, looking to the safe-keeping and management of public funds, may be a wise precaution ; and, if they regulate the control thereof without withdrawing it from the treasurer, we perceive no constitutional objection thereto.”
In addition to the above, the view here taken is sustained In re Breene, 14 Colo. 401, where the court says: “ The statute in question, together with section 13, article 10, of the constitution, above mentioned, was doubtless inspired more by considerations of public policy than the suspicion of damage to the public revenue. The treasurer’s bond protects the state from pecuniary loss, and the criminal law provides a punishment for the embezzlement of public moneys. Private speculation with public funds by the official custodians thereof is emphatically contra bonos mores.”
In State v. Walsen, 17 Colo. 170 (the latest adjudication), it was said: “ Absolute liability of the treasurer and his sureties for all public moneys received by him as treasurer is fixed by the state constitution. In this yespect the obligation of the treasurer is different from that of an ordinary trustee. * * * No amount of care will excuse him in case of loss by theft, fire, or by insolvency of the banks selected as depositories ; he must make the loss good to the state. He can only be discharged by paying over the money when required, and the sureties upon his official bond also assume this unusual liability.”
By this cursory view of the law and the liability of the *460 treasurer and his sureties, it at once becomes apparent that any interference with the contracts of the treasurer, and any restrictions upon him as custodian, inconsistent with his liability assumed, would be illegal and unjust.
The counsel contend that the contract was void as to the treasurer under the provisions of sections 1248 to 1251, Mills’ Stats. (Session Laws, 1889, p. 297). Section 1248 certainly can have no application. It is not contended that there was any embezzlement, conversion to his own use, nor any investment, nor that any funds under his control had been made way with or secreted.
The only statute that could have been violated was that provision contained in section 1249: “No such officer, agent or servant shall loan out, with or without interest, any money or valuable security received by him, or which may be in his possession or keeping, or care or control, by virtue of his office, agency or service, or under color or-pretense thereof,” etc.
Section 1250 is as follows : “ If any such officer, agent or servant shall make any contract or agreement with any person or persons, bodies or body corporate, or other association, by which such officer, agent or servant is to derive any benefit or advantage, directly or indirectly, from the deposit with such person or persons, body or bodies corporate, or other association, of any moneys or valuable securities held by such officers, agents or servants, by virtue of his office, agency or employment, such contract shall, as to such officer, agent or servant, be utterly null and void; but the person or persons, body or bodies corporate, or other association, shall be liable to the county, city, town, township or school district where funds are deposited, in an action for the recovery of all such benefits or advantages as would, by the terms of such contracts or agreements, have accrued to such officer, agent or servant; and payment to the officer, agent or servant shall not protect the person or persons, body or bodies corporate, or other association, against an action of recovery brought *461 by the county, city, town, township or school district whose funds are so deposited.”
Section 1251 fixes the penalty for violation.
Section 1249 and 1250 must be construed together to arrive at the intention of the legislature. An examination clearly shows such intention to have been to prevent the misapplication and use of public funds for the benefit and profit of the officer; to strictly prohibit the use of the money by the officer for speculative purposes and for his own gain.
The sections in question are based upon and enacted for the purpose of carrying out the prohibition contained in section 13, article 10, of the state constitution, and by reference to that, the intention becomes manifest and the limits of legislation defined. It is: “ The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law.”
The bond upon which suit was brought runs to G. H. Moulton, treasurer of the county of Grarfield. The condition is : “ Whereas the said G. H. Moulton, treasurer of the county of Garfield, * * * has on the day of the date hereof as such treasurer deposited,” etc. The certificates of deposit were made to Geo. H. Moulton in his private, not official, character.
Having in view the statutes and decisions already cited, and the absolute and unqualified liability of the treasurer and his sureties to pay over and account for all the money that came into his hands by virtue of his office, the first question is: What, if any, legal effect or significance the fact of his having the bond run to him in his official capacity had upon the transaction? The first legal conclusion from the law and the premises is, that so long as the treasurer and his sureties remained solvent and able and willing .to comply with the obligations of the official bond of the treasurer, the bond, its existence, and its form were not matters of any legal importance or significance to the county. Regardless of its form *462 and apparent official character, it was purely and simply a personal securit}»-, wisely taken, for the protection of his sureties and himself. He was not the agent of the county by virtue of any statute or delegated power to make the transaction, no legal warrant or authority existed, he was to safely keep, disburse and pay over to his' successor.
Court and counsel seem to have fallen into the error of regarding the treasurer as the agent of the county, and that any security by him taken was taken in a fiduciary capacity, and was the property of the county by operation of law, simply from the fact that it was county money. The transaction not being one required or authorized by law, the treasurer could not hand over the security and be discharged to that extent from the liability of himself and sureties — that remained the same; consequently, there was no agency, and no title to the bond in question could pass, nor any cause of action to the county arise, unless by the default of the treasurer and sureties.
The right to follow public money into the hands of depositories by reason of its being public money only arises upon the default and insolvency of those making the official bond. When that occurs, the funds can, so far as they can be traced, be recovered, and all individual securities taken by the officer are either transferred and assigned by the officer or the operation of law, and inure to the benefit of the county.
The cases cited by counsel for defendant and relied upon in argument will be found to be those where there was defalcation of the officer; suits brought after the expiration of the term of office, to follow up and recover the money. Such was the case of Comstock v. Gage, 91 Ill. 328, and City of Chicago v. Gage et al., 95 Ill. 593. Counsel seem to confound bonds of the character in question with official or statutory bonds, those required by law.
It is true, the bond in question runs to plaintiff in error as treasurer of Garfield county. Many reasons might be given why, through prudence or precaution, a bond, though really that of an individual, should designate him in his official *463 capacity. In ease of his death, or any trouble arising out of his administration or an examination of accounts, it would identify such deposits as those of the county intrusted to his care by virtue of his office, and separate them from his personal estate; and although the bond runs to him in his official capacity, its character is not changed, for- the reasons stated above. Not being statutory, nor in an}r manner contemplated by law, it is purely his own property, — an indemnifying bond, taken for his own safety, and not for the benefit of the county.
The case of The Probate Court v. Strong, 27 Vt. 203, relied upon by counsel, has no application. It was the ease of a statutory bond. The statute required from the guardian a bond running to the probate court. The bond in question was given to Joel Allen, judge of probate, etc., “ to the said judge or his successor in said office.” It was claimed that the declaration was insufficient, for the reason that the bond was not a bond to the probate court. The court said : “We think the intention cannot be mistaken, and that it was designed to be an official bond, and not a bond to Judge Allen as an individual. The subject-matter of the bond relates to the court of probate, and to what is purely an official character. * * * This shows clearly the intention to make it an official bond,” etc. The distinction between the two cases is obvious. In this case the intention to make it personal, and a bond of indemnity, is fully expressed, and the intention clear.
The contention of counsel and judgment of the court that the suit was wrongly brought by plaintiff cannot be sustained. By the Civil Code, section 3, it is provided: “Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act.” No provision in the act exempts this case from its provision. This section has been frequently sustained by the courts. See Bassett v. Inman, 7 Colo. 270, where it is said that the assignee of the note and account “ was the real party in interest within the meaning of the Code of Civil Procedure, even though the *464 consideration of the assignment may have been a payment to the assignor after recovery in the suit by the assignee.” See, also, Walker v. Steel, 9 Colo. 388; Limberg v. Higenbotham, 11 Colo. 156; Jackson v. Hamm, 14 Colo. 58; Bank v. Hummel, 14 Colo. 275, where it is said: ‘“The real party in interest’ is held to mean the person in whom the legal title to the claim in suit is vested.” There having been no question of the solvency of the treasurer and his sureties, no default, and the treasurer being liable over for the funds deposited with defendants, and the bond having been taken by the treasurer as one of indemnity, the fact that the money was that of the county, and upon its recovery by the treasurer must have been paid over to the county, did not change the status of the parties, invest the county with the title to the bond, nor divest the treasurer. See Bassett v. Inman, supra; Cummings v. Morris, 25 N. Y. 625; Meeker v. Cleghorn, 44 N. Y. 349; Caulfield v. Sanders, 17 Cal. 569.
The court erred in holding the county to be the “ real party in interest,” and that the suit should have been brought in its name or to its use.
Counsel contend, and the court seems to have adopted the view, that the transaction was a loan or loans, consequently illegal under section 1249, Mills’ Statutes, and that, by reason of such illegality, the security taken by the treasurer passed to the county, under section 1250, Mills’ Statutes. Such construction cannot prevail. The transactions were deposits, payable upon demand, without interest. That the moneys were not payable upon checks, but only upon return of the certificates iu no way alters the legal status.
Technically, all deposits made to banks are loans. The identical money is not to be returned, and the bank becomes the debtor to the amount of the deposit; but it is clear, as before stated, that it was not the intention of the legislature to prohibit the depositing of money in banks for convenience in safe-keeping. It is the using of public money by the officer for his own gain that is intended to be reached. It is the use of money by way of loans. In Maillard v. Lawrence, *465 16 How. (U. S.) 251, it was said : “ The popular or received import of words furnishes the general rule of the interpretation of public laws, as well as of private and social transactions.”
In construing the identical statute before us, the supreme court of the state of Illinois, in Comstock v. Gage, supra, said: “ Admitting that a general deposit of money with a bank is in a strict technical and legal sense a loan, it does not follow that that is the sense and meaning of the word as used in the statute. Such a deposit of money is not in the ordinary and popular sense a loan of money, and we are satisfied that the words ‘ loaning ’ and loan,’ employed in the statute, were used in their popular sense, and not in the strict legal meaning to include a bank deposit.” This authoritative construction of the statute, of which ours is a literal copy, shows that section 1249 has no application to this case. . There being no violation of that section, the provisions of section 1250 can have no application, and the treasurer would not be divested of, or the county invested with, the title to the bond by operation of law, and not being possessed of it as the “ real party in interest,” no action could be maintained by the county or “ to its use.”
The bond, as one of indemnity, is in proper form. The bank made default in the paj’ment of the money the bond was given to secure, and, by its terms, it became operative. The deposit of the money in the bank was a proper and legal consideration. (Comstock et al. v. Gage.) We think the allegations in the complaint show a cause of action, that it was properly brought in the name of plaintiff, and that the court erred in sustaining the demurrer.
The judgment will be reversed and the cause remanded.

Reversed.